**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re Abbott Laboratories Infant Formula Shareholder Derivative Litigation | Case No. 22 CV 05513 |
| | Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

The Special Litigation Committee of the Board of Directors of Abbott Laboratories moves to stay all proceedings in this case for six months while it investigates the surviving claims raised in the consolidated amended complaint. Doc. [191].  Plaintiffs argue that the stay should be denied based on the single member Special Litigation Committee's lack of independence and the Company's delay in creating the Committee and requesting the stay.  For the following reasons, the Special Litigation Committee's motion is granted in part and denied in part.

### Background

This case stems from the shutdown of Abbott's Sturgis Plant after the discovery of tainted infant formula, which ultimately contributed to a nationwide shortage of baby formula in 2022. Plaintiffs bring this action derivatively, on behalf of nominal defendant Abbott Laboratories, against certain current and former members of Abbott's Board of Directors and Executive Officers. Plaintiffs' surviving claims seek to remedy violations of the federal securities laws and breaches of fiduciary duties.  The Court assumes familiarity with the underlying facts of this case from its previous opinion. *See In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*, 2024 WL 3694533, at *1 (N.D. Ill. Aug. 7, 2024).

On August 7, 2024, the Court denied Defendants' motion to dismiss as to Counts II and III. *Id.* Defendants moved for reconsideration on August 27, 2024, which the Court denied on November 12, 2024. Doc. [186]. On September 19, 2024, the Abbott Board unanimously appointed a special litigation committee consisting of one member, Director Michael O'Grady, to investigate the claims, prepare a report, and take other such actions in the best interest of the Company and its shareholders. Doc. [192] at 8. At some point between then and the filing of the motion to stay on November 19, 2024, the Special Litigation Committee retained McGuireWoods as its counsel to investigate the claims.

## Discussion

Plaintiffs bring their claims derivatively, which raises different concerns than a direct action taken by shareholders against the company. "Derivative suits enforce corporate rights and any recovery obtained goes to the corporation." *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981). This is in contrast to a direct shareholder litigation where the shareholders sue the company's directors and officers directly for securities claims. Indeed, such a claim was separately brought by shareholders and is currently pending in this district. *See Pembroke Pines Firefighters & Police Officers Pension Fund v. Abbott Laboratories et al.*, 1:22-cv-04661 (N.D. Ill.).

Where, as occurred here, a group of shareholders bring claims of alleged misconduct against the board on behalf of the company and the court finds that demand was excused, the company can form a special litigation committee to review and investigate the claims. The purpose of forming "a special litigation committee is to promote confidence in the integrity of corporate decision making by vesting the company's power to respond to accusations of serious misconduct by high officials in an impartial group of independent directors." *Biondi v. Scrushy*, 820 A.2d 1148, 1156 (Del. Ch. 2003), *aff'd sub nom. In re HealthSouth Corp. S'holders Litig.*, 847 A.2d 1121

2

(Del. 2004). The idea being that by "forming a committee whose fairness and objectivity cannot be reasonably questioned, giving them the resources to retain advisors, and granting them the freedom to do a thorough investigation and to pursue claims against wrongdoers, the company can assuage concern among its stockholders and retain, through the [special litigation committee], control over any claims belonging to the company itself." *Id.*

It is common for the special litigation committee to request a stay of proceedings while it investigates, as the Committee has done here. Although such stays are generally granted, the decision is left to the discretion of the trial court. *Emps. Ret. Sys. of City of St. Louis ex rel. FirstEnergy Corp. v. Jones*, 2021 WL 6067034, at *2 (6th Cir. Dec. 16, 2021). District courts have well-established authority to stay proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant the stay, courts consider whether the special litigation committee lacks independence, whether the company delayed in forming the special litigation committee, any stays that have already been granted, discovery in parallel cases, the discovery that has already commenced and what plaintiffs' request, and if the discovery would interfere with the committee's investigation. *See FirstEnergy Corp.*, 2021 WL 6067034, at *2; *Grafman v. Century Broad. Corp.*, 743 F. Supp. 544, 548 (N.D. Ill. 1990) ("[T]he court must ascertain among other things (1) when [the company's] committee began its investigation, (2) how long this investigation should take, (3) what discovery [plaintiff] would like to have in the interim, (4) whether such discovery would interfere with the committee's investigation."); *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 4894833, at *2 (S.D. Ohio Oct. 20, 2021) ( "Some 'special circumstances' that have led courts to deny a stay include: (1) unreasonable delay, such as belated formation of the [special litigation

committee]; (2) long prior stays during the motion-to-dismiss stage; (3) coordinating discovery with parallel cases; and (4) doubts as to the [special litigation committee's] independence.").

In the event that a special litigation committee moves to dismiss the litigation, courts do not automatically defer to its business judgment. Instead, as established in the landmark case *Zapata Corp. v. Maldonado*, due to the unique ability of the defendant in a derivative suit to appoint a committee that can then dismiss the claims brought against it, the special litigation committee must show "that no disputed issues of material fact exist about the independence, good faith, and reasonableness of the [special litigation committee's] investigation and whether the [special litigation committee] had reasonable bases for its conclusions." *In re Oracle Corp. Derivative Litig.*, --- A.3d ---, 2025 WL 249066, at *8 (Del. Jan. 21, 2025) (quoting *Diep ex rel. El Pollo Loco Holdings, Inc. v. Trimaran Pollo Partners, L.L.C.*, 280 A.3d 133, 151 (Del. 2022)); *see also Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985) ("The only instance in American Jurisprudence where a defendant can free itself from a suit by merely appointing a committee to review the allegations of the complaint is in the context of a stockholder derivative suit. A defendant who desires to avail itself of this unique power to self destruct a suit brought against it ought to make certain that the Special Litigation Committee is truly independent."). Then "as a second discretionary step, the court can apply its own business judgment and decide whether dismissal or settlement is in the corporation's best interests." *In re Oracle Corp. Derivative Litig.*, 2025 WL 249066, at *8.

## I.     O'Grady's Independence

Plaintiffs argue that the stay should be denied because the one-member Special Litigation Committee consisting of O'Grady is not sufficiently independent from the Director Defendants. The Special Litigation Committee disputes Plaintiffs' evidence that O'Grady is not independent

and contends that the appropriate time to consider his independence is after the Special Litigation
Committee completes its investigation and files a report and motion to dismiss with the Court.

Although special litigation committees' requests for stays are typically granted, that is not
always the case. Courts have denied motions to stay when there is no possibility that the special
litigation committee could be viewed as independent, therefore it would be "futile and wasteful"
of corporate and judicial resources to allow the investigation and litigate the inevitable motion to
dismiss. *Biondi*, 820 A.2d at 1165. In *Biondi v. Scrushy*, the court found that the special litigation
committee's chairman's public announcement—that in his opinion the outside law firm's
investigation into the conduct exonerated the company insider just as the special litigation
committee's own investigation was commencing—irreparably tainted any future decision by the
committee. *Id.* at 1165–66. That fact alone was a sufficient reason for the court to deny the stay.
But the court noted that additional factors made it an easy decision including, that: (1) the company
retained a law firm to conduct its own investigation in advance of the special litigation committee
under the supervision of the whole board, (2) the company's new CEO claimed that the report
exonerated them of the alleged wrongdoing but then the law firm undercut that interpretation of
its findings, and (3) a former member of the special litigation committee's served with the alleged
wrongdoer on a foundation board and made a public statement that the alleged wrongdoer did
nothing wrong. The court found that this made it "inconceivable" that the committee would ever
be able to meet its *Zapata* burden if it later decided to move to terminate the litigation. *Id.*
Similarly, in *In re Galena Biopharma, Inc. Derivative Litigation*, the court denied both the motion
to stay for 90 days and a motion to reconsider when the single-member special litigation committee
had previously issued a public report exculpating nearly all of the alleged wrongdoers of nearly all
of the alleged wrongful conduct. 2014 WL 5494890, at *4 (D. Or. Oct. 30, 2014).

Here, Plaintiffs have not raised such egregious evidence to argue that O'Grady lacks independence. Plaintiffs point to O'Grady's professional and personal ties to the Director Defendants as evidence of his inability to be independent. Doc. [203] at 13–17. They argue that as Chairman, President and CEO of Northern Trust, his bank holds client investments worth over $10 billion in companies where eight of the Director Defendants are directors or officers, and that creates a conflict of interest for him. Plaintiffs also point to O'Grady's service on various professional and charity boards with other Director Defendants. Lastly, Plaintiffs assert that because O'Grady was on the Abbott Board when it filed its motion to dismiss, which included an argument about why allowing the suit to proceed would not be in the best interest of the Company, he is not independent. While all of this is certainly evidence relevant to the independence of the Special Litigation Committee, it does not reach the level of being inconceivable that the committee could ever meet its *Zapata* burden.

Under the established standard, "if there is any litigable doubt" about a special litigation committee's independence, courts are to grant the stay and "then consider questions of committee independence at the same time it examines the reasonableness of the bases for the committee's conclusion." *Biondi*, 820 A.2d at 1164. While this Court echoes the concerns expressed by other courts about the wisdom of a general policy of not addressing special litigation committee independence until after incurring the time and expense of compiling a report, that is the general policy established under Delaware law.[1] *See, e.g.*, *Rosenbloom v. Pyott*, 2014 WL 10988342, at *3 (C.D. Cal. Dec. 8, 2014) ("This Court questions the general wisdom of such a policy, given the

---

[1] Abbott was incorporated under the laws of Illinois, so Illinois law applies. In the absence of established precedent, Illinois courts often follow the guidance of other jurisdictions, particularly Delaware, when considering corporate law issues. *See Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.2d 374, 379 (7th Cir. 1984) ("Illinois courts have often been guided by the decisions of other jurisdictions in making corporate law regarding directors' fiduciary duties and the business judgment rule."). The parties both relied on Delaware case law in their briefs.

potential for both parties' waste of time and resources if [a special litigation committee] spends months conducting its investigation only to have its recommendation disqualified.").

Unlike the special litigation committee members in both *Biondi* and *Galena*, Plaintiffs have not identified any statements from O'Grady indicating that he previously decided the Director Defendants were innocent of the alleged misconduct. While those courts also looked at the personal ties between the special committee members and defendants, the factor given the most weight was that the special litigation committee member had already publicly exonerated the defendants. Here, Plaintiffs' argument centers on O'Grady's personal and professional ties to the Director Defendants, which on their own are not sufficient challenges to his independence to deny the stay. Plaintiffs note that the Board—which O'Grady was a member of—already made a statement that: "There is no situation in which it would be in Abbott's shareholders' interest to prove facts that would help the plaintiffs in other recall-related litigation against Abbott. In that scenario, Abbott would likely pay more in the other cases than it could recover in this action. It cannot be in the interest of Abbott and its shareholders to pursue a claim that would make a net corporate loss likely." Doc. [112] at 46–47. Although this could raise a doubt about whether O'Grady would take the investigation seriously, Plaintiffs have not established undisputed facts showing what involvement O'Grady had in reviewing and approving that language in the motion to dismiss. As the issues raised by the Plaintiffs leave space for a litigable doubt, a stay cannot be denied on independence grounds, but Plaintiffs are free to raise these concerns during a future *Zapata* argument.

Should the Special Litigation Committee upon issuing its report move to dismiss this case, such a motion would be subject to the higher standard of review established by the Delaware Supreme Court in *Zapata. See In re Oracle Corp. Derivative Litig.*, 2025 WL 249066, at *8

(discussing the review standard established in *Zapata*).  The Special Litigation Committee would have the burden of establishing its own independence. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1055 (Del. 2004).  At that time, Plaintiffs may receive discovery on issues related to O'Grady's independence and are free to raise their concerns about his independence again.

## II.      Delay and Ongoing Discovery

The independence of the single member of the Special Litigation Committee is not the only consideration before the Court on the motion to stay.  There is also an issue of the ongoing discovery and the delay in the request to stay discovery.  The Court has a duty to ensure "that the corporation's investigation is not a mere artifice for delay." *Grafman*, 743 F. Supp. at 548.  Courts have found that corporations are not entitled to a stay if it is being used to delay the litigation, as that could result in abusing the timing of forming the special litigation committee and the speed of its investigation to stall derivative litigation. *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 4894833, at *2 (S.D. Ohio Oct. 20, 2021).  Further, courts consider several nonexclusive factors including when the company formed the committee, when it asked for the stay, whether the case was previously stayed, and how far along discovery has already progressed when deciding whether to grant or deny the stay.  What a court considers varies based on the specific facts of the case.

For example, in *Carlton Investments v. TLC Beatrice International Holdings, Inc.*, when denying the motion to stay, the court considered that there was already a significant stay in discovery, a long and complex motion to dismiss that was litigated, and much time was already spent in discovery, including eight weeks of depositions and 100,000 documents collected. 1996 WL 33167168, at *9 (Del. Ch. June 6, 1996).  Also, the court found that the plaintiffs were not

seeking to interfere with the board's investigation and that allowing the discovery would not become moot because the information requested would assist with the second step of the *Zapata* analysis. As a result, the court determined that the appropriate outcome was to allow the board to conduct its investigation, while also allowing the plaintiffs to proceed with discovery. Likewise, the court in *Miller v. Anderson*, denied the special litigation committee's motion to stay the proceedings for six months because it delayed eleventh months in moving to stay the case, during which there were 95 other filings and hundreds of hours spent briefing issues before the court. 2021 WL 4220780, at *1 (N.D. Ohio Sept. 16, 2021). Further, in *Employees Retirement Systems of City of St. Louis v. Jones*, the court denied the stay because: (1) the defendants initially opted to investigate themselves rather than set up a special litigation committee, (2) there had already been multiple lengthy stays in the case including the mandatory stay under the Private Securities Litigation Reform Act, (3) discovery had already commenced in a parallel proceeding, and (4) there was no indication that producing the documents would hinder the special litigation committee's investigation. 2021 WL 4894833, at *4 (S.D. Ohio Oct. 20, 2021).

Similarly, a significant amount of work has already been expended on written discovery and document productions in this case. Prior to the motion to dismiss, Abbott produced documents to the Plaintiffs in response to a books and records inspection demand pursuant to 805 ILCS 5/7.75. After the motion to dismiss was denied, the Special Litigation Committee did not file its motion to stay discovery until November 19, 2024, over two months after the discovery schedule was set and after two of the discovery deadlines passed. In the intervening months, the parties have engaged in written discovery under the supervision of the magistrate judge. Further, both parties assert that the documents the Special Litigation Committee and the Plaintiffs will review are largely the same. Doc. [192] at 15; Doc. [203] at 17. The burden on the Company to produce the

9

same documents to both groups at the same time is minimal, and it is arguably more efficient than having to do it two separate times, particularly when the written discovery process is already ongoing. Further, there has already been a lengthy stay in discovery mandated by the Private Securities Litigation Reform Act and the Special Litigation Committee provides no reasons why producing the written discovery would hinder its investigation.

Moreover, as other courts have noted, if the Special Litigation Committee moves to dismiss, it "must show, and the court must be satisfied, that no disputed issues of material fact exist about the independence, good faith, and reasonableness of the [special litigation committee's] investigation and whether the [special litigation committee] had reasonable bases for its conclusions." *Diep on behalf of El Pollo Loco Holdings, Inc. v. Trimaran Pollo Partners, L.L.C.*, 280 A.3d 133, 151 (Del. 2022). Unlike when considering whether demand is excused, where the board is presumed to be independent, the *Zapata* "analysis contemplates not only a shift in the burden of persuasion but also the availability of discovery into various issues, including independence." *Beam*, 845 A.2d at 1055. To that end, Plaintiffs could obtain discovery on the Special Litigation Committee's investigation and report, and on the Committee's independence to determine whether there are disputed facts and whether the Committee had a reasonable basis for its conclusions. *See In re Big Lots, Inc. S'holder Litig.*, 2017 WL 2215461, at *3–4 (S.D. Ohio May 19, 2017) (granting plaintiffs discovery into all information the special litigation committee relied on when drafting its report). This discovery is necessary to prevent a special litigation committee from cherry-picking the facts highlighted in their report.

Courts generally permit plaintiffs to review everything the special litigation committee reviewed and relied on in its investigation and conclusions. For example, in *In re Big Lots, Inc. Shareholder Litigation*, the court rejected arguments that the plaintiffs were only entitled to the

special litigation committee's report and its appendices, and instead granted plaintiff access to the materials the special litigation committee relied on when drafting its report, because it could relate to its independence, good faith, and reasonableness. 2017 WL 2215461, at *3–4. The court also recognized that without this information it would be "difficult to assess the reasonableness either of the committee's investigation or the conclusions it reached based upon the materials before it." *Id.* at *4 (quoting omitted). Similarly, the court in *Ross v. Abercrombie & Fitch Company*, allowed the plaintiffs to obtain everything the special litigation committee relied on in its investigation. 2008 WL 728329, at *4 (S.D. Ohio Mar. 14, 2008).

While there are limits imposed on what plaintiffs can obtain in *Zapata* discovery, there is no indication that Plaintiffs are seeking such out-of-bounds documents at this time. These limits typically relate to certain communication with, work by, and bills for the special litigation committee's counsel as part of its investigation. *See In re Big Lots, Inc. S'holder Litig.*, 2017 WL 2215461, at *4. Other courts have limited discovery to prevent the plaintiffs from going on a fishing expedition above and beyond what is necessary to evaluate the investigation into the claims. *In re Baker Hughes, a GE Co., Derivative Litig.*, 2023 WL 2967780, at *19 (Del. Ch. Apr. 17, 2023), *aff'd sub nom. In re Hughes*, 312 A.3d 1154 (Del. 2024). However, that is not what has been requested here. The parties have already noted that the documents currently being produced related to the underlying claims are the same as the documents the Special Litigation Committee is investigating. These would be the same documents the Committee relies on when drafting its report. Meaning that the Plaintiffs could get these documents regardless of whether the Special Litigation Committee gives the case back to them or moves to dismiss it. Therefore, it is not a question of if the Plaintiffs would receive these documents, but when. Thus, it is a more efficient use of time to produce them now.

Moreover, the second step of the *Zapata* analysis is for the court to determine using its own business judgment whether the claims should be dismissed. This preserves the "court's role as the ultimate decider of whether litigation should be dismissed" and serves to strike "the balance between legitimate corporate claims as expressed in a derivative stockholder suit and a corporation's best interests as expressed by an independent investigating committee." *Diep*, 280 A.3d at 158 (quoting *Zapata*, 430 A.3d at 789). Courts should "refuse to dismiss a derivative suit when 'corporate actions meet the criteria of step one, but the result does not appear to satisfy its spirit, or where corporate actions would simply prematurely terminate a stockholder grievance deserving of further consideration in the corporation's interest.'" *Id.* (quoting *Zapata*, 430 A.3d at 789). As this step requires the Court to consider and balance the legitimacy of the claims against the corporation's interest as expressed by the committee, a complete record regarding those claims would aid in that determination. *See Lewis*, 502 A.2d at 972 (allowing the plaintiffs to obtain discovery into "[a]ny reasonably valid claim that the directors acted because of a conflict of interest" to allow the court to evaluate those claims under the second step of *Zapata*); *Ross*, 2008 WL 728329, at *3 ("Should the Court opt to proceed to the second step of the *Zapata* analysis, it is likely that the Court will have to engage in at least some independent review of the witness statements and supporting factual material which persuaded the committee[.]").[2]

This case was originally brought in October 2022, with the operative amended complaint filed in October 2023. As we are well into 2025—and any motion practice from the Special Litigation Committee could foreseeably take up much of this year—the best use of both the

---

[2] Moreover, a limited record makes it more difficult for the Court to evaluate the Special Litigation Committee's investigation and report, which could on its own be a basis to reject its recommendation. *See Sutherland v. Sutherland*, 958 A.2d 235, 245 n.34 (Del. Ch. 2008) ("Not only does the lack of a record hinder the court's, and the plaintiff's, ability to scrutinize the [special litigation committee's] good faith, independence, and reasonableness, it also suggests that the [special litigation committee] has not taken its obligation seriously and has not acted in good faith.").

Company's and this Court's time is to keep the ongoing written discovery moving, as it will inevitably be produced to Plaintiffs regardless of the outcome of the Special Litigation Committee's investigation. The Special Litigation Committee argues its actions are not a mere artifice of delay, so it should have no trouble with the Court's decision to keep the case moving forward. As district courts have extremely broad discretion in controlling discovery, the Court finds that the Company's delay along with the amount of work already expended on written discovery, combined with the minimal burden on the Special Litigation Committee's work to produce written discovery are sufficient reasons to allow written discovery to continue.

The same cannot be said for oral discovery. The deadline for notices of depositions and Rule 45 subpoenas is March 28, 2025. This is well over a month from now and there is no evidence before the Court that work on those depositions has started. Further, the time and expense required to prepare witnesses for depositions, unlike producing written discovery, requires a different type and level of preparation from the Company that could impede the Special Litigation Committee's ability to conduct its own investigation. Moreover, having witnesses sit for depositions has the potential to interfere with the Company's own need for interviews to prepare its report. For these reasons, oral discovery will be stayed.

Lastly, the Court must consider whether the amount of time for the requested stay is reasonable. The Special Litigation Committee requested a six-month stay on November 19, 2024, and argues this is a reasonable amount of time given the complexity of the allegations. As the Special Litigation Committee was formed on September 19, 2024, this would total eight months – until May 19, 2025, to investigate and provide a report. After reviewing similar cases and considering the allegations the Special Litigation Committee must investigate, the Court finds that a stay until May 19, 2025, is reasonable and sufficient time for the Special Litigation Committee

to investigate and report on these claims. *See Strougo ex rel. Brazil Fund, Inc. v. Padegs*, 986 F. Supp. 812, 815–16 (S.D.N.Y. 1997) (finding a three-month stay that provided the committee a total of six months since its inception to be a reasonable amount of time to investigate).

## Conclusion

For the reasons stated above, the Special Litigation Committee's motion to stay [191] is granted in part and denied in part. Written discovery will continue under the supervision of the magistrate judge. Oral discovery is stayed pending the Special Litigation Committee's report. The Court strikes all future dates on the discovery schedule. The Special Litigation Committee's report will be due on May 19, 2025. The Court will not be inclined to extend this stay further so the Special Litigation Committee should take all reasonable steps to complete its investigation by this deadline.

**SO ORDERED.**

Dated: February 14, 2025

_____
Sunil R. Harjani
United States District Judge

14